COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Fitzpatrick, Judges Elder and Annunziata
Argued at Chesapeake, Virginia


BOBBY JOE LEE MEDLIN

                                                MEMORANDUM OPINION[*] BY
v.        Record No. 0392-04-1          JUDGE ROSEMARIE ANNUNZIATA
                                                NOVEMBER 9, 2004
COMMONEALTH OF VIRGINIA


               FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
                              Wilford Taylor, Jr., Judge

               Charles E. Haden for appellant.

               Margaret W. Reed, Assistant Attorney General (Jerry W. Kilgore,
               Attorney General, on brief), for appellee.


        Bobby Joe Lee Medlin appeals his conviction of unauthorized use of an automobile in

violation of Code § 18.2-102 on the ground that insufficient evidence supports his conviction.

For the reasons that follow, we affirm.

                                        I.  Background

        On appeal, we review the evidence in the light most favorable to the Commonwealth, the

party prevailing below, together with all reasonable inferences that may be drawn.  Garcia v.

Commonwealth, 40 Va. App. 184, 189, 578 S.E.2d 97, 99 (2003).  So viewed, the evidence

establishes that Medlin was employed by A-Plus Towing and came to work on July 8, 2003

complaining of a toothache.  The company's owner, Bobby Morris, testified that Medlin was

assigned to drive a 1992 Ford Super Duty tow truck valued at between $8,000 and $10,000.

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

After visiting a dentist, Medlin returned to work and asked to borrow some money from Morris to pay for a prescribed pain medication. Morris gave Medlin forty dollars and "told him to go buy the medicine and to take [the] truck home and park it." Morris testified that Medlin was the only person who had a set of keys to the tow truck other than the set Morris kept in his office.

Medlin was neither "on duty" nor "on call" after he left work. When Morris telephoned him that evening and got no response, he drove to Medlin's house. The tow truck was not there. Based on a conversation with Medlin's girlfriend, Morris believed that Medlin had gone to Hampton General Hospital. However, Morris was unable to locate either Medlin or the tow truck at the hospital.

Later, Morris received a telephone call and learned that his truck was on Mercury Boulevard. When he arrived at Mercury Boulevard, Morris found the Super Duty tow truck Medlin had taken. The tow truck was running with the keys in the ignition and was hooked up to a Chevrolet truck. Medlin did not ask for, nor did he obtain, permission to tow the Chevrolet truck. Morris unhooked the Chevrolet truck and loaded the Super Duty to the tow truck he had driven to the scene.

Numerous times that night, Morris called Medlin on the business cell phone Morris provides his drivers, but Medlin hung up each time immediately upon hearing Morris say, "Hello." Morris did not hear from Medlin again until he called the office asking to be bailed out of jail "a week or two" after the incident.

Regarding general company policy, Morris explained that he permits his employees to take trucks home, but "the rule is, if someone calls you to tow a vehicle, you need to call me before you tow that vehicle." Morris further explained that if an employee is "out on [his] own

to some of the private properties that I have, if [he] decide[s] to go out on one of [his] nights off and tow a car from a private property[, then] I allow [him] to do that."

In support of his motion to strike, Medlin argued the evidence was insufficient because Morris had not seen him operate the tow truck and because the company had a liberal policy permitting employees to use its trucks when they were off duty. The trial judge denied the motion and said the following:

> The evidence is, I'm convinced, beyond a reasonable doubt that you committed the offense. Mr. Morris told you not to use the truck, to take it home and park it. You didn't do that. You were towing and you didn't have authority. You didn't call in to the dispatcher or even call in after the fact, as the policy permits. Even if you picked up somebody, you had a duty to call in.

This appeal followed.

## II. Analysis

### A. Standard of Review

When the sufficiency of the evidence is challenged on appeal, the appellate court reviews the evidence that tends to support the conviction and upholds the conviction unless it is plainly wrong or lacks evidentiary support. Code § 8.01-680; Commonwealth v. Jenkins, 255 Va. 516, 520, 499 S.E.2d 263, 265 (1998). "If there is evidence to support the convictions, the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial." Id. at 520, 499 S.E.2d at 265. Conflicts in the evidence are resolved by the fact finder, and such conflicts are not revisited on appeal unless "'the evidence is such that reasonable [persons], after weighing the evidence and drawing all just inferences therefrom, could reach but one conclusion.'" City of Bedford v. Zimmerman, 262 Va. 81, 86, 547 S.E.2d 211, 214 (2001) (quoting J & E Express, Inc. v. Hancock Peanut Co., 220 Va. 57, 62, 255 S.E.2d 481, 485 (1979)) (alteration in Zimmerman).

The Commonwealth may rely on circumstantial evidence to prove its case beyond a reasonable doubt, but in doing so it must exclude every reasonable hypothesis of innocence. Pease v. Commonwealth, 39 Va. App. 342, 360, 573 S.E.2d 272, 280 (2002) (en banc), aff'd, 266 Va. 397, 588 S.E.2d 149 (2003). "The statement that circumstantial evidence must exclude every reasonable hypothesis of [innocence] is an alternative way of stating the fundamental precept that the Commonwealth has the burden to prove each element of an offense beyond a reasonable doubt." Id. Circumstantial evidence may prove the Commonwealth's case beyond a reasonable doubt because, "[w]hile no single piece of evidence may be [] sufficient, the combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion." Id. (internal quotations omitted).

B. The Evidence Was Sufficient To Prove that Medlin Used the Vehicle without Authority

A violation of Code § 18.2-102 "'may be committed by an employee of the owner of a motor vehicle in using the vehicle for his own purposes not connected with the purposes for which the vehicle had been entrusted to him or in using the vehicle contrary to the instructions of the owner.'" Overstreet v. Commonwealth, 17 Va. App. 234, 237, 435 S.E.2d 906, 908 (1993) (quoting 7A Am. Jur. 2d Automobiles and Highway Traffic § 349 (1980)). "[W]here an act violates the specific scope or duration of consent to use a vehicle, a trespassory taking contemplated by Code § 18.2-102 occurs." Id. at 238, 435 S.E.2d at 908.

Here, the evidence, viewed in the light most favorable to the Commonwealth, established that Medlin operated the tow truck and that his operation exceeded the scope of Morris's authorization. Morris authorized Medlin to use the tow truck for the limited purpose of driving himself home after complaining about and seeking medical attention for a toothache. Morris directed Medlin to park the tow truck at his home but did not authorize him to use the tow truck to tow any vehicle. Medlin was the sole individual who had access to the vehicle's ignition keys.

- 4 -

When Morris could not reach Medlin by telephone, he drove to Medlin's home and noticed the tow truck was not there. Instead, Morris found the truck on Mercury Boulevard later that night, hooked up to another vehicle in preparation for towing it. Additionally, Medlin repeatedly hung up the phone when Morris tried to contact him about the tow truck and failed to contact Morris for a "a week or two" after leaving the company's premises with the tow truck, facts from which the trial court could infer guilt. See Shackleford v. Commonwealth, 262 Va. 196, 209, 547 S.E.2d 899, 907 (2001). Taken as a whole, we conclude the evidence excluded Medlin's hypothesis that he did not drive the truck to Mercury Boulevard and that the evidence was sufficient to support the trial court's conclusion that Medlin operated the tow truck in excess of Morris's limited authorization.

Medlin's further contention that the company's general policy, which allowed its drivers to "go out on one of [their] nights off and tow a car from a private property," supports the conclusion that Morris was merely "advising rest but not strictly forbidding personal use of the vehicle" is without merit. Here, Morris's testimony establishes that, on the date in question, he explicitly and clearly told Medlin to take the tow truck home and park it, notwithstanding any company policy to the contrary. Moreover, to the extent Morris's testimony regarding the company's policy conflicts with his testimony that he did not authorize Morris to do anything other than take the truck home and park it, it is evident the trial court resolved that conflict in favor of the Commonwealth. We are bound by that determination on appeal. "On appeal this court must 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and *all fair inferences to be drawn therefrom.*'" Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980) (quoting Wright v. Commonwealth, 196 Va. 132, 137, 82 S.E.2d 603, 606 (1954)).

For the foregoing reasons, we affirm Medlin's conviction.

Affirmed.